FRANCES SHILLINGSTAD, Plaintiff and Respondent, *v.*
ARNOLD NELSON, Defendant and Appellant.

No. 10362

Submitted October 10, 1962. Decided January 29, 1963.

378 P.2d 393.

Sandall, Moses, Cavan & Battin, John Acher (argued orally), Billings, for appellant.

Kronmiller & Freeman, Douglas Y. Freeman (argued orally), Hardin, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a verdict of a jury in favor of plaintiff in the amount of $15,555. The action was for personal injuries as a result of an auto accident in which the auto being driven by plaintiff was struck in the rear on February 24, 1959, at a busy intersection in Billings while stopped at a red light. The driver of the striking auto did not stop.

414

The defendant denied being involved in a collision, notwithstanding that he admitted ownership of a light blue Plymouth automobile with license No. 23-1085, which license number was noted in writing by a passenger in plaintiff's auto at the time of the collision. Defendant admitted being in the vicinity of the collision, having the front end of his car and brakes repaired shortly thereafter. Defendant was identified as the driver. He could not explain the damage to his car and made no report to the Police Department or Highway Patrol. Without further ado, we say from the record it was conclusively shown, and the jury so found, that defendant was the "hit and run" driver.

Further details of the accident and proof of negligence are not deemed of importance to the issues on this appeal. But, of importance is the testimony as to injuries, their cause and extent and the ultimate question of damages.

Plaintiff reported the accident to the police and filed a written report. On the police report plaintiff did not indicate that any injuries had been suffered in the accident. On March 10, 1959, being two weeks after the accident, plaintiff went to Dr. Allard, an orthopedic surgeon. Dr. Allard testified that plaintiff related her pains to the accident. Her injuries consisted of a fracture of the left foot which he treated, with partial avulsion of the peroneus brevis tendon and a mild sprain of the left ankle and secondary irritation of the sensory nerve. On April 14 further injuries were complained of by the plaintiff which can be simply described as back injury with nerve damage. Dr. Allard particularized the injuries, physical examination, history, tests, treatment and prognosis in confirmation of plaintiff's statement of injuries, although he did make it clear that the relation of the injuries to the accident of February 24 was by the plaintiff's statement only.

Dr. Anderson also testified as to the injuries of plaintiff

based upon her statement of the history and concurred with the findings of Dr. Allard.

The defense put on four witnesses who testified that on occasion prior to the accident, plaintiff had claimed injury to her back and as having been under treatments. It was also brought out that plaintiff had been in another automobile accident on June 8, 1959. Plaintiff denied receiving any injury at that time.

The defense called Dr. Francke, a specialist in radiology. He testified that Dr. Schwidde, another Billings physician, had referred the plaintiff to him for the purpose of taking X-rays, and that he had taken X-rays on March 10, 1960, a number of which were admitted into evidence. Dr. Francke testified that defendant's Exhibit F showed a scoliosis of plaintiff's spine, which he did not consider an injury. Exhibit G, according to Dr. Francke, showed a slight narrowing between two discs and that the narrowing was minimal and could be normal, and that statistically such a narrowing would be more apt to be normal. Dr. Francke testified that such narrowing in his opinion did not indicate a protruded intervertebral disc. Exhibit H indicated a slight narrowing between the articular facets in the lower lumbar area and an early arthritis which Dr. Francke termed as minimal. Exhibit I was interpreted by Dr. Francke as essentially normal.

On cross-examination, Dr. Francke testified that he did not make a complete examination of plaintiff, his examination being as a radiologist only. He testified that he consulted the referring physician, Dr. Schwidde at great lengths, although not in the last few weeks. Dr. Francke referred to notes which were based on conversations with Dr. Schwidde. These notes were produced and examined by plaintiff's counsel. Then counsel for plaintiff asked if Dr. Schwidde was to be produced as a witness. Defendant's counsel informed him that Dr. Schwidde was not going to be called. This took place on Friday, February 24, 1961. At that time plaintiff

moved to strike the entire testimony of Dr. Francke upon the ground that his testimony was based upon Dr. Schwidde's information. Court was recessed until Monday morning at that point. Immediately on the resumption of the trial on Monday morning, plaintiff's counsel withdrew his motion to strike Dr. Francke's testimony. Dr. Francke continued to testify, stating that on the basis of the X-rays alone, it was not possible to say for sure whether plaintiff had a herniated disc.

On redirect examination, Dr. Francke made it clear that his diagnosis was made from the films alone. His notes, previously referred to, were introduced into evidence as plaintiff's Exhibit 11.

This was on Monday. On Tuesday, the last day of the trial, on rebuttal, counsel for plaintiff called one of counsel for defendant, Mr. Sheehy, as a witness. It was brought out that plaintiff had been examined by Dr. Schwidde on two occasions by stipulation of counsel. The last examination being on February 15, just five days prior to trial. Mr. Sheehy was asked whether or not Dr. Schwidde had made a written report of his findings to Mr. Sheehy. Mr. Sheehy admitted he had and that he, Mr. Sheehy, had the report. Mr. Sheehy refused to present the report on the grounds that it was hearsay and part of his work file. Objections were further made. The court required Mr. Sheehy to produce the written report, whereupon it was marked as Plaintiff's Exhibit 15 and offered into evidence. Strenuous objection was made by counsel for defendant. At that point plaintiff's counsel asked permission to call Dr. Schwidde as their own witness to lay a further foundation if the court would grant a recess for the purpose. The court refused saying:

"I don't think any further foundation needs to be laid myself. I am inclined to think that it would delay this trial, and to delay it again I don't think is necessary; at this time I am

going to overrule the objection of the defendant, and the exhibit will be admitted.''

Plaintiff's Exhibit 15 was a medical report on plaintiff in letter form written by Dr. Schwidde to Mr. Sheehy, counsel for the defendant. The medical report was the result of a medical examination by Dr. Schwidde of the plaintiff on February 15, 1961, just five days prior to the time the trial commenced. The examination had been made pursuant to stipulation of counsel. The stipulation included no reference to the disposition of any medical reports. Counsel for defendant had, during the course of the trial, on its fifth day, informed the court that Dr. Schwidde would not be called as a witness for the defense.

Exhibit 15 was a lengthy report. It generally described plaintiff's history and condition. It made recommendations. In these particulars its contents did not differ materially from the testimony of Drs. Allard and Anderson. But the part particularly objectionable to the defendant was paragraph 4 on page 3 which read:

"The patient's attitude appears to be honest and genuine.

"The only evidence of a possible exaggeration is the inability to grip with the left arm and often the patients, as in this case, will explain they are reluctant to bring on the neck, shoulder and arm discomfort. Also, she shows a rather generalized diminished sensation on the left side which may be explained partially as a conversion hysteria. I believe that her described difficulties in the neck and in the low back and the neurosis are due to the described accident."

The defendant, appellant here, urges that Exhibit 15 is the "rankest form of hearsay, and that defendant was effectively prevented from explaining or clarifying in any way Dr. Schwidde's remarks through cross-examination."

As a prelude to our discussion and in order to set the stage upon which the trial judge acted, we add the following comments. The exclusion of witnesses rule had been invoked. Dr.

Francke testified without having heard any other witness. He admitted not having examined the plaintiff. In response to cross-examination he made references to Dr. Schwidde's findings and history of the patient. He did not see Plaintiff's Exhibit 15, it having only been prepared on February 15, 1961, just five days before the trial.

Also, it appears that counsel for plaintiff had never seen the medical report, Exhibit 15, and did not know its contents. Dr. Schwidde was defendant's medical examiner who examined plaintiff twice by stipulation. Defendant chose not to call Dr. Schwidde as a witness. Plaintiff's counsel learned of the report for the first time on rebuttal. Defendant's objections to Exhibit 15 were lengthy and exhaustive and, in part, went to the lack of foundation. It was this lack of foundation that the trial judge saw no need to have further established. It was admitted that Exhibit 15 was a true and correct written report of Dr. Schwidde of the physical findings and history of plaintiff under circumstances previously related.

Defendant's brief on appeal puts the question as:

"In this case the question of proximate cause is a crucial one and the inability of the defendant to cross-examine Dr. Schwidde on his statement was prejudicial error."

Thus we look to the main issue on this appeal, that is, whether the admission of Plaintiff's Exhibit 15 into evidence was prejudicial error under the circumstances herein.

When it was developed on cross-examination of Radiologist Francke that his testimony was based in part on Dr. Schwidde's history, defendant's counsel was asked if he would connect up Francke's testimony by producing the medical witness Schwidde. The defendant refused.

Plaintiff had opportunity to call Dr. Schwidde had he chose, this being on Friday. On Monday, plaintiff withdrew any objection to Dr. Francke's testimony. Then it became clear, in response to plaintiff's cross-examination as well as on re-direct, that Dr. Francke was testifying simply as a radiologist on the

basis of the X-rays alone. He clearly said that plaintiff could have a herniated disc as previously testified by Drs. Allard and Anderson because he couldn't tell from X-rays alone. He reiterated that, even though he had discussed the findings and history of the patient with Dr. Schwidde, his testimony was based on an X-ray examination alone.

So far as causation was concerned, plaintiff's own medical witnesses were not able to state that her injuries were the result of the accident, except on the basis of plaintiff's statement. Neither was Dr. Francke able to say whether her injuries were caused by the accident. On the other hand, four witnesses were called by the defense to show that plaintiff had told each about a back injury suffered prior to 1958, having been an invalid and receiving treatment.

■ Thus, the prejudicial effect of Exhibit 15 becomes apparent. The challenged portion of Exhibit 15 is clearly hearsay. (For a general statement of what is hearsay, see 31 C.J.S. Evidence § 193.) As such it should have been excluded unless coming within some exception to the rule against hearsay evidence. (Trenka v. Moos, 118 Mont. 607, 168 P.2d 837.) That it concerned a primary issue in the case likewise cannot be questioned. What exception to the hearsay rule makes Exhibit 15 admissible? Respondent here says that "Medical reports of the opposing side are admissible either as an admission against interest or for impeachment purposes."

■■ That Exhibit 15 cannot be an admission against interest is clear because there is no evidence that Dr. Schwidde was the agent of defendant. It seems likewise apparent that it could not be used for impeachment purposes. Dr. Francke did not testify as to causation nor did he testify to anything else that impeachment would apply to. He didn't know of Exhibit 15's existence.

But then, respondent goes on to argue that R.C.M.1947, § 93-401-11, permits the introduction of Exhibit 15. Counsel argues that Dr. Francke's testimony was inadmissible because

he based his diagnosis, not on a physical examination of plaintiff, but in part upon Dr. Schwidde's findings. Then he argues that this "opened the door" so that section 93-401-11 applies.

R.C.M.1947, § 93-401-11, provides:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing, which is necessary to make it understood, may also be given in evidence."

Dr. Francke did not testify as to Dr. Schwidde's letter, Exhibit 15, nor as to its contents. He did not know of its existence. He did not testify as to causation. He only interpreted the X-rays. Under such circumstances section 93-401-11 does not apply. The theory of "opening the door", advanced by the respondent plaintiff, cannot inure to her since she attempted to "open the door" in cross-examination. And as related before, Dr. Francke testified without objection after it became clear that his testimony was based on the X-rays only.

We do not find case authority in Montana on this subject, but there is abundant authority that unsworn medical reports, where no right to cross-examination is had, is hearsay and inadmissible. See Panion v. Crichton, 144 Colo. 170, 355 P.2d 938; Brown v. Coca-Cola Bottling, Inc., 54 Wash.2d 665, 344 P.2d 207.

Appellant also challenges the introduction of Exhibit 15 as being improper rebuttal. We need not discuss this proposition because of what has already been said.

Because of what we have said heretofore, we find that the admission of Exhibit 15 was prejudicial error. Since a new trial is ordered, the other specifications of error need not be further considered.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES JOHN C. HARRISON, and THE HONORABLE E. GARDNER BROWNLEE, District Judge, sitting in place of MR. JUSTICE DOYLE, concur.

MR. JUSTICE ADAIR:

I dissent.

It is almost four years since Frances Shillingstad suffered most painful and serious injuries by having her automobile struck from behind by a "hit and run driver". After numerous delays and a hard fought jury trial she was awarded $15,555 judgment.

The record shows that the trial was well conducted by the District Judge, and I find therein no such prejudicial error as warrants the setting aside of the jury verdict and the ordering of a new trial of the action. In my opinion, Frances Shillingstad will be fortunate indeed if she can survive until another jury and another district judge has the opportunity to pass judgment in her action.

I would affirm the judgment which has already been rendered on the jury's verdict, and I reserve the right to file a further dissenting opinion herein.